Jones, Oliver B., J.
The defendant in error Louise Cramer, .administratrix, as plaintiff below, recovered a verdict and judgment against the plaintiff in error, which was one of the defendants in the case below. The action was for the benefit of the next of kin of Robert F. Cramer because of an accident which, resulted in his death.
Robert F. C-ramer was in the employ of The Pittsburgh, Cincinnati,. Chicago & St. Louis Railway Company, and had been in such employ for at least six years. On the particular morning of *7 the accident he was engaged in switching and making up a train of freight cars west of Beechmont avenue. In that locality the railroad has four main tracks, the two outside being for passenger trains and the two middle tracks being for freight trains. The Norfolk & Western Railway Company had a trackage agreement vyith The P., C, C. & St. L. Ry. Company under which it had the use of the tracks of the latter road. The two south tracks 'carried east-bound trains and the two north tracks carried west-bound trains. To the west of the switch near which "Cramer met his death the south -tracks curve outwardly in such a way as to admit of a number of spur tracks, which were used for separating freight cars and making up freight trains. The time of the accident was in the neighborhood of nine o’clock on the morning of December 11, 1913, a bright, cold day.
Plaintiff’s intestate was engaged, with' others of his crew, in making up a freight train, and the engine, just before the accident, having shunted some cars upon the west-bound freight track, was by him switched over on to the east-bound freight track to go forward and pass around such' cars and be switched back upon the west-bound freight track. After throwing the west switch Cramer stepped upon the running board or step in front of the pilot of the engine with which he was working, for the purpose of riding up on it to throw the east switch in order to enable that engine to pass over to the west-bound freight track. He stood upon this step or running board until the engine was about at the location of the switch, looking forward to the northwest across the track. While *8 his engine was so proceeding the Norfolk & Western mail train came along the east-bound passenger track on its regular run, at a speed much greater than that of the engine -on which Cramer was riding. This speed has been estimated by different witnesses at from twenty to fifty miles per hour, the engineer and conductor on the passenger train fixing it from twenty-five to thirty miles an hour. Just as the freight engine reached the eastern switch, Cramer, without looking backward, stepped off the engine upon which he had been riding, and was immediately struck by the pilot of the passenger engine on the track alongside and was thrown in the space between the two tracks and picked up dead.
The allegation of negligence in plaintiff’s petition is stated in the following terms:
“The defendant, the Norfolk & Western Railway Company through its agents and servants failed to sound a bell, whistle or warning, as it rounded the curve and approached decedent, and the fireman on said engine failed to keep a proper lookout at all at this particular point and time, and left his post and failed to ring his bell or give warning or signal of the approach of his train, although the engineer, on account of the length of the engine, could not see the point near the track where decedent was; that said train was late and was proceeding at a high and dangerous rate of speed, towit, 'forty miles an hour, and could not be stopped until it 'had gone eight hundred feet beyond the point where decedent was struck.”
The defendant Norfolk & Western Railway Company in its amended answer states its defense *9 and allegations of negligence against the plaintiff’s decedent in the following language:'
“That plaintiff’s decedent placed himself in a dangerous position by alighting from an'engine of the defendant, The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company upon or so near the track upon which the defendant Norfolk & Western Railway Company was operating its train as to be struck by the same, and before thus placing himself in a dangerous position he failed to look and listen to ascertain if a train of the said defendant Norfolk & Western Railway Company were approaching; that before alighting from said engine, he did not heed the danger signals warning him of the approach of a train of said defendant Norfolk & Western Railway Company, which signals were given by the blowing of the engine whistle by the engineer of the defendant, The Pittsburgh, Cincinnati, Chicago & St. Louis Railway Company, upon which engine decedent was riding; that the decedent alighted from the said engine next to the track upon which the train of the said defendant Norfolk & Western Railway Company was approaching, when, in the reasonable and proper performance of his duties, he should and could have alighted from the other side of said engine; that decedent failed to heed the warning of the -bell which was being rung by the fireman of the engine of the said defendant Norfolk & Western Railway Company.”
The evidence shows that as Cramer leaned out preparing to step off, the engineer of the freight engine noticing the approach of the passenger train gave what is known as a danger signal *10 with his whistle, 'being a succession of -short sharp blasts, for the purpose of warning Cramer of his danger, but that Cramer apparently paid no attention to the warning, and did not look around or realize the approach of the passenger train. This passenger train ran -daily along that track, at the same hour every morning, and on this occasion it was a few minutes late. The deceased had worked in that locality for some little time and was undoubtedly familiar with these facts.
While one of the allegations of negligence of the ' defendant company was that the fireman failed to keep a proper lookout, the evidence shows that he had not been negligent in that respect, and had kept a continuous lookout, except when, the engineer having shut off the steam from the passenger engine because of a green light shown at a signal station just before they reached the point of the accident, his duty required him -to reach down and open the fire door and a blower valve in order to kill the smoke of the engine, which required but a few seconds.
The testimony also shows that the engineer of the passenger train gave the usual crossing whistle for Beechmont avenue at the regular point some little distance west of the accident, and that the bell of his engine was constantly 'ringing up to the time of the accident. There were witnesses, 'however, who testified that they did not .remember whether or not the bell was rung, and that they had not heard it.
It is not necessary to determine whether or not a case of negligence was made out against the defendant; because the evidence clearly shows that *11 plaintiff’s intestate was guilty of negligence in stepping from the running board as he did immediately in front of the approaching passenger .train without first looking to see whether he was safe in so doing. A proper course, which could easily have been pursued by him, was to have moved across the running board of his engine and to have stepped off from its left side, upon the freight track, where there could have been no possibility of being struck, and where he would have been nearer to the switch he was about to throw.
The trial court, in its opinion overruling motion for a new trial, after discussing the evidence as to the negligence of plaintiff’s intestate, arrived at this conclusion:
“It seems to the court that there can be but one inference from these circumstances, namely, that the deceased was guilty of a want of ordinary care — negligence—in alighting as he did from his engine.”
But notwithstanding this conclusion of the trial court he ■ sustained the verdict in favor of the plaintiff, and entered judgment thereon under what is known as the doctrine of “last chance,” as laid down in the cases of Railroad Co. v. Kassen, 49 Ohio St., 230, and L. S. & M. S. Rd. Co. v. Schade, Admr., 15 C. C., 424, and in 2 Thompson on Negligence, Section 1629, as quoted in Drown v. Northern Ohio Traction Co., 76 Ohio. St., 234, at page 247.
We think that the court below was in error in resting its decision upon this doctrine of last chance, in which he felt sustained by the cases of Steubenville & Wheeling Traction Co. v. Brandon, *12 87 Ohio St., 187; West, Recr., v. Gillette, 22 C. C., N. S., 369, and Greve v. Cincinnati Traction Co., 2 Ohio App., 486. These three cases related to street traffic, and did not involve the doctrine of last' chance, and can not control the case at bar.
It was conceded by all of the witnesses that after plaintiff’s intestate had left the place of safety on the running board of his own engine, and put himself in a place of danger in front of the approaching passenger engine, it was impossible for the engineer or brakeman on the passenger train to have done anything to avoid the injury. The engine already had the steam off for 'the purpose of slowing up to be under control for the block signal which they expected at Rendcomb Junction, and yet was running-at such a rate that it' was impossible to stop or in any way signal Cramer to prevent the accident. He had received the signal from his own engine whistle and had failed to observe it. There can be no question but that his own negligence caused his unfortunate death. Wabash Rd. Co. v. Skiles, 64 Ohio St., 458, and Bejac v. C., P. & E. Ry. Co., 23 C. C., N. S., 475, are cases which involve the same principle of law.
The verdict of the jury is clearly against the manifest weight of the evidence, and the motion for a new trial should have been granted by the court below.
Judgment reversed and the cause remanded for a new trial.

Judgment reversed, and cause remanded.

Jones, E. H., P. J., and Gorman, J., concur.